UNITED STATES of America, Appellee,

v.

Leonard Russell HORGER, Appellant.

UNITED STATES of America, Appellee,

v.

Robert THIEMAN, Appellant.

UNITED STATES of America, Appellee,

v.

Jack Simmons HORGER, Appellant.

Nos. 75–1645 to 75–1647.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1976.

Decided Jan. 25, 1977.

Betty M. Sloan, Columbia, S. C. (Frank K. Sloan, Columbia, S. C., on brief), for Leonard and Jack Horger.

James B. Craven, III, Durham, N. C. (Everett, Everett, Creech & Craven, Durham, N. C., on brief), for Robert Thieman.

Thomas P. Simpson, Asst. U. S. Atty., Columbia, S. C. (Mark W. Buyck, Jr., U. S. Atty., Columbia, S. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and RUSSELL and HALL, Circuit Judges.

HAYNSWORTH, Chief Judge:

Three men were found guilty of intimidating a United States Drug Enforcement Administration special agent while he was engaged in the performance of his official duties and of stealing government property from him. Each seeks reversal, but only one contention deserves comment.

Leonard Russell Horger argues that *Geders v. United States*, 425 U.S. 80, 96

S.Ct. 1330, 47 L.Ed.2d 592 (1976) requires reversal of his conviction. That is true only if *Geders* is to be retroactively applied, and we hold that under these facts it is not. *Geders* held that an order preventing the defendant from consulting his counsel "about anything" during a 17-hour overnight recess between his direct and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment.

On February 26, 1975, after defendant, Leonard Russell Horger's, direct examination was completed, defense counsel requested that another, out-of-town defense witness be called out-of-turn. As the defendant left the witness stand the court admonished him:

> Now, you can't talk, talking to you, Mr. Horger, you can't talk to anyone. You're still under examination. Just as a matter of convenience, its a good spot. I know she's got to be back, so if you want to take her right now, we'll take her right now. You can step down, but you can't talk with anybody about this. No, you can sit back there, but I'll know whether you're talking or not

> .    .    .    .    .

After the testimony of the out-of-town witness the court recessed for the evening. After the jury was excused the judge again told the defendant he was still under oath and was not to talk to anyone about the case. The defendant returned to the witness stand when court reconvened the next morning.

No objection was made at trial to the court's ruling and no prejudice to the defendant has been claimed.

█ It is settled that the retroactivity of a new rule does not depend on the particular section of the constitution on which it is based. *Johnson v. New Jersey*, 384 U.S. 719, 728, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Shiflett v. Virginia*, 447 F.2d 50, 54 (4th Cir. 1971); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) is a Sixth Amendment right to counsel case and is fully retroactive, but that does not necessarily require a finding of retroactivi-

ty in this effective assistance of counsel situation. *Gideon* recognized the fundamental fact that a layman, unassisted by counsel, could not adequately further his claims of innocence and violation of previously declared rights, but the bare possibility that the rule may have some effect on the reliability of the fact-finding process does not automatically require its retroactive application. *Bassett v. Smith*, 464 F.2d 347 (5th Cir. 1972). *See also Williams v. United States*, 401 U.S. 646, 655, n. 7, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). Much depends upon the extent to which the reliability of that process is implicated. If little or not at all, other considerations tending against a retroactive application may readily carry the day; if substantially implicated, that circumstance must still be weighed against the practical considerations arising out of the reasonableness and extent of reliance upon the former rule and the practical effect a retroactive application would have in the administration of justice.

Here there was no showing of any need for consultation between lawyer and client during the overnight recess. No prejudice is shown; counsel quite frankly claims none. In this case the integrity of the fact-finding process seemingly is implicated not at all. Even if we speculate that there may have been some communication between lawyer and client had the defendant-witness not been instructed as he was, the reliability of the fact-finding process is but slightly implicated.

The court's instruction to the defendant-witness represented the established practice in the District of South Carolina. The United States Attorney represents that it has been in existence at least since 1956. The defense lawyer was thoroughly familiar with the practice, and her familiarity with it influenced her failure to object to it. Surely we cannot say that its constitutional infirmity should have been obvious to court and counsel at the time the instruction was given.

Since the practice is one of longstanding, at least in the District Court of South Carolina, a retroactive application of the rule

would probably affect a number of other convictions. We do not know how many, but the fact that a substantial number may be involved militates strongly against a retroactive application of a new rule which implicates the integrity of the fact-finding process so slightly.

In another case a showing of actual prejudice would introduce a new ingredient into the computation. If the magnitude of the prejudice shown was substantial, a different result might be required.

*AFFIRMED.*