**In re ASBESTOS LITIGATION.**

Superior Court of Delaware,
New Castle County.

Submitted: March 11, 1985.
Decided: March 29, 1985.

POPPITI, Judge.

The matter is presently before the Court upon the application of some members of the defense bar in the asbestos litigation for a standing order designed to address asserted problems experienced during the course of party depositions. The expressed problems center around the issue of attorney and client consultations during recess-

es in deposition testimony of the client deponent and the related issue of what if anything opposing counsel may do to develop a record regarding the attorney and client recess consultation. In this regard, the Court has considered counsel's arguments heard on March 11, 1985 as well as letter memoranda submitted by counsel.[1] This is the Court's opinion and Standing Order # 5 on the issue.

It is interesting to note that the positions expressed by counsel with regard to this issue are not aligned with their status as plaintiffs' or defense counsel. Further, it is also noteworthy that those of the defense bar who articulate similar problems do not speak with one voice concerning a proposed remedy. It would appear that positions presented are as follows:

1) The Court may not interfere with the unlimited consultation of an attorney and client even while the client is in recess during the course of deposition testimony. It is argued that such consultation is protected by the attorney-client privilege.

2) The Court should completely foreclose a client deponent from consulting with his attorney about his deposition testimony until the close of his testimony. It is argued that such prohibition is in the interest of protecting the integrity of the fact-finding process.

3) Where consultation between an attorney and a client deponent has occurred during the course of a recess in the client's deposition testimony, the attorney should be permitted to develop a record regarding the deponent's credibility insofar as it relates to the issue of a "coached witness."

In the context of asbestos litigation where the protracted and complex nature of the litigation is coupled with the fact that plaintiff deponents may be sufferers of life-consuming asbestos-related diseases, the nature of the deposition testimony, of necessity, takes on the character of *de bene esse* testimony. *See generally Woolley on Delaware Practice* § 583 (1906). Given these factors, I am satisfied that the taking of testimony of party deponents in the asbestos litigation cases should be governed by the same rules as the taking of testimony at trial. *See Woolley on Delaware Practice* § 609 (1906).[2] *See also* 4A *Moore's Federal Practice* § 30.58 (1984). I am also satisfied that the trial court has the inherent authority to regulate the conduct of proceedings before it to the end that the administration of justice is both fair and efficient. *See Delaware* Rules of Evidence 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence ..."). *See also Eustice v. Rupert*, Del.Supr., 460 A.2d 507 (1983).

Finally, I am satisfied that in the context of the present issue, ethical considerations concerning the trial conduct of members of the Delaware Bar are equally applicable during the taking of deposition testimony. In this regard, The Code of Professional Responsibility directs in pertinent part as follows: "a lawyer shall not ... [f]ail to comply with known local customs of courtesy or practice of the bar or a particular tribunal...." DR 7–106(C)(5). Any order

---

1. Before the Court are the following:
 November 30, 1984 letter from Mr. Semple to Mr. Jacobs;
 December 6, 1984 letter from Mr. Jacobs to Mr. Semple;
 February 22, 1985 letter to the Court from Mr. Crumplar;
 March 4, 1985 letter and proposed order to the Court from Mr. Crumplar;
 March 5, 1985 letter and proposed order to the Court from Mr. Phillips;
 March 7, 1985 letter to the Court from Mr. Crumplar;

March 8, 1985 letter to the Court from Mr. Paul.

2. Woolley states: "Upon oral examination before a commissioner, testimony may be taken under the same commission against the party on whose behalf the commission issued, for the purpose of impeaching the testimony of any witness who has been examined for such party, by proving the bad character of the witness for veracity, or contradictory statements made by him; such proof to be according to the rules applicable in courts of law."

entered with a design to regulate the orderly discovery and/or ultimate presentation of *de bene esse* testimony should, therefore, be constructed against the backdrop of current Delaware practice.

 I hereby find that it is the long-standing practice in this jurisdiction to honor a prohibition of attorney-client consultation regarding the client's testimony during cross-examination. *See Bailey v. State,* Del.Supr., 422 A.2d 956 (1980) (defendant witness in criminal trial instructed, upon leaving the stand during cross-examination, not to discuss his testimony with anybody during overnight recess); *Aiello v. City of Wilmington, Delaware,* 623 F.2d 845 (3d Cir.1980) (in district court civil trial, plaintiff's counsel was directed not to communicate with plaintiff during breaks in his cross-examination for lunch and overnight); *Cascella v. GDV, Inc.,* Del.Ch., C.A. No. 5899, Brown, Ch. (January 15, 1981) (the Court ruled that there be no attorney-client consultations regarding the client's deposition testimony during said deposition, although the attorney could object to questions or, in limited circumstances, instruct the client not to answer); *Rose Hall Ltd. v. Chase Manhattan Overseas Banking Corp.,* 494 F.Supp. 1139 (D.Del.1980) (the district court entered an order regarding deposition testimony which formed the basis for Chancellor Brown's ruling in Cascella *).*[3]

 Furthermore, I am of the opinion that since it is the settled law of this jurisdiction that such a limitation of attorney-client consultation does not constitute a *per se* violation of a criminal defendant's right to the assistance of counsel under the Sixth Amendment to the United States Constitution, *see Bailey v. State, supra* at 960; *a fortiori* a similar prohibition in a civil action cannot be a *per se* violation of the civil litigant's due process right of access to the assistance of counsel under the Fourteenth Amendment to the United States Constitution.

In *Bailey v. State, supra,* the Delaware Supreme Court distinguished a limitation of attorney-client consultation regarding the client's testimony from a blanket sequestration order. A blanket sequestration order was held to be a violation of a criminal defendant's Sixth Amendment right to the assistance of counsel in *Geders v. U.S.,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), and has also been held to be a violation of a civil litigant's Fourteenth Amendment due process right to the assistance of counsel in *Potashnick v. Port City Construction Co.,* 609 F.2d 1101 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). In discussing the *Geders* decision, the Delaware Supreme Court concluded that:

> *Geders* clearly does not hold that any instructional limitation upon a criminal defendant's access to counsel constitutes plain or reversible error regardless of the nature of the limitation.... *Bailey v. State, supra* at 961.

The Court goes on to note that:

> The discretion accorded a trial judge with regard to the examination of witnesses clearly implies that there is not a constitutional right to the aid of counsel about one's testimony while under cross-examination. *Bailey v. State, id.* at n. 13.

There is additional support for the Delaware Supreme Court's holding in *Bailey v. State, supra,* in the case of *Bailey v. Redman,* 502 F.Supp. 313 (D.Del.1980), *aff'd* 657 F.2d 21 (3d Cir.1981), which denied Bailey's petition for a *Writ of Habeas Corpus* grounded on the issue of denial of his Sixth Amendment right to the assistance of counsel. The district court, in holding that the right of a criminal defendant

**3.** In light of the finding regarding Delaware practice, *supra,* the Court need not consider *The New Jersey Express Co. v. Nichols,* 33 N.J.Law 434 (1867), offered as authority supporting the position of plaintiffs' counsel.

It is also noted parenthetically that another case relied upon by plaintiffs' counsel, *Thompson v. The Atlantic Building Corp.,* D.C.Mun. App., 107 A.2d 784 (1954), is inapposite to the present inquiry as it deals with attorney-client consultations during direct testimony.

to consult with counsel once he has begun to testify may be foreclosed until the close of his testimony, discussed the *Geders v. United States* decision, *supra*, stating in pertinent part as follows:

In *Geders* ... the Supreme Court held "that an order preventing [the] petitioner from consulting his counsel 'about anything' during a seventeen hour overnight recess between his direct and cross-examination infringed upon his right to the assistance of counsel guaranteed by the Sixth Amendment." The Court so held in the face of a contention that the trial court's order was justified in the interest of avoiding the risk of unethical coaching of the defendant. While the Court concluded that this interest would not justify a complete bar on defendant-attorney communications over an extended period during which they would normally work together, a majority of the Court indicated that this was a legitimate interest which would justify some restrictions of defendant's right to consult with his counsel.... The necessary implication of this suggestion by the majority of the Court is that a trial judge, in the interest of the integrity of the factfinding process, can foreclose a defendant from consulting with his attorney until the close of his testimony so long as he does not do so in a way that unnecessarily interferes with other collaboration between defendant and his counsel." *Bailey v. Redman*, 502 F.Supp. at 315.

■ Having stated the above, I am convinced that a Court-ordered prohibition against attorney-client consultations regarding a client's deposition testimony during the course of taking a deposition in the asbestos litigation should be entered since the order would comport with Delaware practice and further would not violate the litigant deponent's Fourteenth Amendment right to the assistance of counsel. *See also Cartin v. Continental Homes of N.H.*, Vt. Supr., 134 Vt. 362, 360 A.2d 96 (1976), and *Stocker Hinge Manu. Co. v. Darnel Industries, Inc.*, Ill.App., 61 Ill.App.3d 636, 18 Ill.Dec. 489, 377 N.E.2d 1125 (1978).

Additionally, I am convinced that a Court-ordered procedure should be established which will protect a party's right to a full and fair opportunity to learn and present the facts of the case. In this regard the extent of any questions directed to the deponent subsequent to any attorney-client consultation during deposition testimony must reflect a balance between the interest of preventing coaching and the interest of the attorney-client privilege. The United States Supreme Court in *Geders, supra*, 425 U.S. at 89–90, 96 S.Ct. at 1336, alluded to some latitude in questioning of this nature stating that:

The opposing counsel in the adversary system is not without weapons to cope with "coached" witnesses. A prosecutor *may cross-examine a defendant as to the extent of any "coaching" during a recess, subject, of course, to the control of the court.* Skillful cross-examination could develop a record which the prosecutor in closing argument might well exploit by raising questions as to the defendant's credibility, if it developed that defense counsel had in fact coached the witness as to how to respond on the remaining direct examination and on cross-examination. In addition the trial judge, if he doubts that defense counsel will observe the ethical limits on guiding witnesses, may direct that the examination of the witness continue without interruption until completed. (Emphasis added).

For reasons articulated hereinabove, the following shall constitute Standing Order # 5 in the Delaware asbestos litigation, said order to have full force and effect in all matters relating to pending Delaware asbestos cases.

IT IS THEREFORE HEREBY ORDERED:

1. Unless a specific written or oral (on record) agreement to the contrary exists among all counsel of record in a particular case, during the course of any recess and/or continuance of a deposition of a

party deponent, or any employee, officer, director and/or agent of a party deponent, said deponent and said deponent's attorney, employee of attorney and/or agent of said attorney (hereinafter "said person") are prohibited from consulting with each other concerning the deponent's testimony (already given and/or expected or which may be anticipated to be given) until the close of the deponent's testimony. "Consultation" means communication in any form whatsoever, either directly or indirectly, between said deponent and said person.

2. Following any recess and/or continuance of said deponent's deposition any attorney of record participating in the deposition may make a record concerning what if any attorney/client consultation may have occurred during the course of the recess and/or continuance by asking the following series of questions of said deponent:

A. Did you consult with your attorney, employee of your attorney and/or agent of your attorney (hereinafter "said person") during the recess and/or continuance?

—If answer is "no," end questioning.

—If answer is "yes," identify the person by name and proceed to question B.

B. Did you consult with said person with regard to your deposition testimony either already given and/or expected or which may be anticipated to be given?

—If answer is "no," end questioning.

—If answer is "yes," proceed to question C.

C. Did you consult with said person, and/or did said person give you any instruction and/or advice regarding how you should answer questions during the remainder of the deposition? (Note—not what was said.)

—If answer is "no," end questioning.

—If answer is "yes," proceed to question D.

D. About what areas of your testimony already given and/or expected or which may be anticipated to be given did you consult with said person? (Note—not what was said.)

3. Any violation of the provisions of this Standing Order may upon application or *sua sponte,* result in appropriate sanctions and may be referred to the Board of Professional Responsibility of the Delaware State Bar.