Barney Earl **CRUTCHFIELD**,
Petitioner-Appellee,

v.

Louie L. **WAINWRIGHT**, Jim Smith,
Respondents-Appellants.

No. 84–3508.

United States Court of Appeals,
Eleventh Circuit.

Oct. 3, 1985.

Thomas H. Bateman, III, Dept. of Legal Affairs, Tallahassee, Fla., for respondents-appellants.

Gwendolyn Spivey, Tallahassee, Fla., for petitioner-appellee.

Before HILL and ANDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

GARZA, Senior Circuit Judge:

Louie L. Wainwright, as Secretary of the Florida Department of Corrections, and Jim Smith, as Attorney General of Florida, (referred to jointly as "the State") appeal from an order of the United States District Court for the Northern District of Florida. In that order, the court below adopted the magistrate's report and recommendation that a writ of habeas corpus issue in favor of Barney Earl Crutchfield. Finding that the court below applied an improper legal standard, we vacate the order and remand the cause for a hearing.

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. These three alleged errors involved, first, Crutchfield's claim that he was denied Equal Protection under the Fourteenth Amendment when the trial court sentenced him more severe-

## I

Crutchfield's petition alleges five errors in his state court conviction for armed robbery with a deadly weapon. The court below found that three of the alleged errors had been waived in view of Crutchfield's failure to assert them on direct appeal in the Florida system.[1] A fourth point, this one involving Crutchfield's right to counsel, was also the appropriate subject for a direct appeal but was nonetheless addressed on the merits by the court below since it had been addressed on the merits by the Florida court on collateral review. *See Booker v. Wainwright*, 703 F.2d 1251, 1255 (11th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 29, 78 L.Ed.2d 266 (1983). The court below found merit to this point and accordingly did not reach Crutchfield's final allegation: that the trial court had erred in bringing out on cross-examination evidence of Crutchfield's prior criminal activity.

The assertion leading to the granting of Crutchfield's petition involves Crutchfield's allegation that the trial court denied him the effective assistance of counsel. Crutchfield maintains that he was denied access to his attorney at two different times during a critical stage of the proceeding against him. The first time, which formed the basis on which the court below granted the writ, occurred when the trial judge instructed Crutchfield, who was then testifying, not to discuss his testimony with his lawyer during a recess. Crutchfield's lawyer did not object to this instruction. Whether the recess was very brief, as maintained by the State, or whether it was two hours in length, as maintained by Crutchfield, was not determined by the district court. Instead, the court followed the former Fifth Circuit case of the *United States v. Conway*, 632 F.2d 641 (5th Cir. 1980), which held that any such denial of

ly than his co-defendant; second, Crutchfield's claim that the trial court erred in denying a severance; and third, Crutchfield's assertion that the evidence was insufficient to prove the elements of the crime of which he was convicted.

access to counsel, regardless of its length, violated the Sixth Amendment of the United States Constitution and required reversal of the case without any inquiry as to prejudice.

The second aspect of Crutchfield's claim of denial of the effective assistance of counsel was not relied on by the district court in granting Crutchfield's petition. This alleged error arose as Crutchfield was actually testifying but wanted to speak with his lawyer. The court had just held a bench conference concerning whether Crutchfield's prior burglary conviction could be used to impeach his testimony that he "never robbed or would have ever robbed any place—for money." R. at 767. After the court determined that it would allow the impeachment evidence, it called for the jury. Before the jury returned to the box, the following exchange took place:

> THE COURT: Son, don't direct any statement to me. If you have anything, you speak to your lawyer.
> THE WITNESS: Can—can I speak with him?
> THE COURT: But don't direct statements to me. R. at 774.

Crutchfield was then briefly questioned further by the prosecutor outside the presence of the jury. A short time later, but still prior to the return of the jury, Crutchfield made a second request to talk to his lawyer:

> THE WITNESS: Can I speak with him for a minute?
> THE COURT: What did I just tell you?
> THE WITNESS: Yes, sir. R. at 776.

The jury then returned and the prosecutor continued questioning Crutchfield, apparently without his ever having had the opportunity to talk to his lawyer. Crutchfield maintains that this exchange constitutes evidence that he was denied the effective assistance of counsel on a second occasion.

## II

We first address the violation of the right to counsel that formed the basis for the district court's granting Crutchfield's petition: the denial of access to counsel during a recess. In *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), the Supreme Court held that a defendant's Sixth Amendment right to counsel is violated by a court's order directing the defendant not to consult with his lawyer during an overnight recess. The Court held that reversal in such a case is required even absent a showing of prejudice by the defendant. The precise rationale for the Court's holding in *Geders* is, however, quite difficult to glean from the Court's opinion. Moreover, the Court took care to emphasize that the result in the case of a "brief routine recess" might be different. *See* 425 U.S. at 89 n. 2, 96 S.Ct. at 1336 n. 2; *but see* 425 U.S. at 92, 96 S.Ct. at 1337 (Marshall, J., concurring).

### A

In *United States v. Conway, supra*, a panel of the former Fifth Circuit addressed the issue left open in *Geders*. The court in *Conway* held it to be error to "depriv[e] a criminal defendant of the right to consult with counsel during court recesses—regardless of how brief the recesses may be." 632 F.2d at 645. Although Conway had been denied access to his lawyer for only one hour, the court reversed his conviction without any inquiry as to prejudice. *Id.*

If *Conway* still correctly states the law in this Circuit, it follows that the district court ruled correctly. *Conway* is clearly good law to the extent that it holds that it is always error for a trial judge to deny a defendant access to his attorney during a recess. However, subsequent Supreme Court decisions in the right to counsel area cast serious doubt on *Conway's* continued viability insofar as it purported to lay down a rule of per se reversal. In the same-day cases of *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court addressed broadly the issue of the right to effective assistance of counsel. The Court held that, as a general rule, an individual could prevail on a claim of inef-

fective assistance of counsel only on a showing that the alleged error had some "effect ... on the reliability of the trial process." 104 S.Ct. at 2046. This is so because the right to counsel is "recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Id.* The sole exception to this requirement of demonstrated "effect" is a case of the type where "surrounding circumstances justify a presumption of ineffectiveness." 104 S.Ct. at 2048. Such circumstances are found only when prejudice appears so likely that an individualized inquiry as to effect is not worth the cost. 104 S.Ct. at 2047.

The denial of access to counsel for seventeen hours in *Geders* was given as an example in *Cronic* of a case where prejudice could be presumed. 104 S.Ct. at 2047 n. 25. In citing *Geders* for this proposition, the Court indicated the previously unstated rationale of the *Geders* rule: that prejudice was so likely to result from the overnight denial of access to counsel as to make a specific inquiry superfluous. However, as this court held in *Chadwick v. Green*, 740 F.2d 897, 901 (11th Cir.1984), presumed prejudice will be available in only a "very narrow spectrum of cases"; it therefore does not follow from the Supreme Court's citation of *Geders* that prejudice should be presumed in any instance of denial of access to counsel—regardless of how brief. Indeed, the Supreme Court in *Geders* viewed denial of access during brief routine recesses as a potentially distinct variety of case.[2] This fact, coupled with the admonition of *Cronic* and *Strickland v. Wash-*

*ington* against the creation in this area of broad categories of cases requiring automatic reversal, leads us to inquire as to whether *Conway* has been implicitly overruled.[3]

## B

■ The *Conway* rule of per se reversal for denial of access to counsel during a brief routine recess can survive under *Cronic* and *Strickland v. Washington* only if the likelihood of prejudice is so great that a case-by-case inquiry would not be worth its cost. We simply do not believe that this is so in the case of routine recesses during the course of a day at trial. If the recess were very brief, for example, a matter of minutes, then prejudice to the defendant would seem highly unlikely. As the length of the recess increases, of course, so does the probability of prejudice. Nonetheless, denial of access during any recess of the type likely to arise in the course of a day at trial does not seem sufficiently likely to justify a rule of per se reversal. Accordingly, we hold that a court faced with this question should undertake to determine if the defendant has been prejudiced by the trial judge's denying him access to his attorney during a brief routine recess.[3a]

Under *Strickland v. Washington*, the burden placed on a defendant to show prejudice in the typical case of ineffective assistance of counsel is a heavy one: he must show that, but for his counsel's errors, there is a reasonable probability that the proceeding would have had a different outcome. 104 S.Ct. at 2068. The apparent

2. Furthermore, this court very recently left open the possibility that denial of access to counsel during a recess might be harmless under certain circumstances. *See United States v. Romano,* 736 F.2d 1432, 1438 (11th Cir.1984), *vacated in unrelated part as moot,* 755 F.2d 1401 (1985).

3. We are apparently the first court of appeals to address this precise issue. Crutchfield has cited a number of cases from other circuits that are essentially in accord with *Conway. See, e.g., United States v. Bryant,* 545 F.2d 1035 (6th Cir. 1976); *United States v. Allen,* 542 F.2d 630 (4th Cir.1976), *cert. denied,* 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977); *United States v.*

*Vesaas,* 586 F.2d 101, 102 n. 2 (8th Cir.1978) (dicta). None of these cases is particularly helpful, however, in that each of them predates *Cronic* and *Strickland v. Washington.*

3a. Although this opinion has treated *United States v. Conway, supra,* as having been implicitly overruled in part by subsequent Supreme Court cases, we recognize that *Conway* might also be interpreted as having failed to address the possibility of harmless error, and thus as having left that issue open. *United States v. Romano,* 736 F.2d 1432, 1438 (11th Cir.1984) (not deciding whether such error might be subject to the harmless error analysis).

rationale for saddling the defendant with this burden is a balancing of the defendant's right to counsel against the need for finality of trials. 104 S.Ct. 2067–68. The analogous rule in this situation would be to require a defendant to prove that, but for the denial of access to counsel, there is a reasonable probability that his trial would have had a different outcome.

We believe that a completely analogous rule is inappropriate, however. The likely harm to a defendant, although insufficient to justify a presumption of prejudice, is more grave in the case of complete denial of access to counsel than in the case of an alleged, perhaps isolated, professionally unreasonable error by counsel. More importantly, we emphasize that it is always error of constitutional magnitude, although, as we have noted, not necessarily reversible error, for a court to instruct a defendant not to confer with his attorney during a recess.[4] On the other hand, a showing of prejudice in the typical *Strickland v. Washington* scenario involving errors by counsel is a prerequisite to the very existence of constitutional error. The more appropriate analogy is therefore to cases where a clear constitutional violation exists, as, for example, in the case of improperly admitted evidence that has been obtained in violation of the Fourth Amendment. In those cases, the prosecution is given the burden of showing that an error is harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We believe that the situation before us is more analogous in this respect to *Chapman* than to *Strickland v. Washington* and adopt the *Chapman* rule in this context.[5]

## III

On remand, the district court may find it necessary to address Crutchfield's second assigned error in the right to counsel area: the failure of the trial judge to allow Crutchfield to talk to his lawyer while Crutchfield was actually on the stand. We should emphasize that this sort of denial of access to counsel is governed by a very different standard than the type involved in *Geders.* Indeed, *Geders* expressly acknowledged a court's power to block a defendant's access to his lawyer for the duration of the defendant's testimony. 425 U.S. at 90, 96 S.Ct. at 1336, 47 L.Ed.2d at 600. This court very recently reaffirmed a court's power to deny a defendant access to his attorney when access would necessitate interruption of the court's proceedings. *See United States v. Vasquez*, 732 F.2d 846, 848 (11th Cir.1984). Accordingly, we hold that a decision whether to allow a testifying defendant to interrupt the proceedings in order to consult with his lawyer is typically committed to the sound discretion of the trial judge. Such a decision rises to the level of constitutional error only if the ruling appears manifestly unreasonable in view of all the circumstances. Such a case will be exceedingly rare.

## IV

In conclusion, we hold that the district court applied an improper legal standard in granting Crutchfield's petition. That judgment must therefore be vacated and remanded. On remand, the district court may also find it necessary to address the remaining issue in Crutchfield's petition:

---

**4.** It is for this reason that we admonish trial judges to refrain from denying a defendant access to his counsel under circumstances, such as the one before us, that do not involve interference with the orderly conduct of a trial. Each time a trial judge denies access in this manner, it, at a minimum, necessitates a hearing as to prejudice. Moreover, if prejudice is found, a new trial will be necessary. These considerable burdens on the courts can be readily averted if trial judges will merely shun this practice.

**5.** If the district court determines on remand that the error in denying Crutchfield access to his lawyer was not harmless beyond a reasonable doubt, it should order that the writ issue, notwithstanding the lack of a contemporaneous objection in the state proceeding. This is so, because the state court chose to ignore the procedural default and address the claim on the merits. *See Engle v. Isaac*, 456 U.S. 107, 135 n. 44, 102 S.Ct. 1558, 1575 n. 14, 71 L.Ed.2d 783 (1981).

the prosecution's use of evidence of Crutchfield's prior criminal activity.

VACATED and REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.