## STATE OF CONNECTICUT *v.* GARY BURROWS
### (3066)

DUPONT, C. J., HULL and BORDEN, Js.

Argued October 4—decision released December 3, 1985

*Robert M. Casale,* with whom, on the brief, was *Max F. Brunswick,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Robert J. Devlin,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant was convicted after a trial to a jury of first degree sexual assault, a violation of General Statutes § 53a-70. During the trial, he asserted an alibi defense and, after the judgment of guilty was rendered, was sentenced to a twelve year term of imprisonment. The defendant claims on appeal that the trial court erred (1) in refusing to issue a capias to secure the attendance of a witness expected by him

to offer exculpatory testimony, and (2) in allowing him to be cross-examined regarding prior arrests that did not result in convictions.

The victim of the assault was an employee of Andre's Massage Service in New Haven. Late in the evening, the victim received a phone call from her employer, Gabriel Gladstone. He informed her that a "Mr. Booth" had telephoned and requested a massage at his residence. Gladstone gave the victim a telephone number to call for directions to the residence. She called the telephone number, later established to be a public telephone, received directions to the house, and arrived at the residence at approximately midnight. There she met a man who identified himself as "Mr. Booth." There were no lights on in the house, and he explained that a fuse had blown and he was waiting to have it fixed. The victim then entered the house with him and was subsequently sexually assaulted.

She was able to describe her assailant to the police in sufficient detail to make a composite picture, but was unable to make a positive photographic identification of the defendant whose picture was included in a photo array of eight persons shown to her. She later made an eyewitness identification of the defendant at a session of court dealing with traffic offenses, after being told that a suspect might be present there.

During the course of the trial, the defendant sought to subpoena Gladstone to offer exculpatory testimony relating to a voice recognition test conducted by the defense in which Gladstone allegedly failed to recognize the voice of the defendant as that of "Mr. Booth." Gladstone was also expected to relate his recognition of the caller's voice as that of one of his regular customers rather than that of the defendant.[1] A sheriff

---

[1] The trial court refused to allow the defendant to offer proof of Gladstone's expected testimony in the absence of a sworn statement by the pro-

was given the subpoena to be personally served. He was met at Gladstone's residence by Gladstone and an unidentified female. Gladstone refused to allow the sheriff inside the door, thereby preventing the sheriff from placing the subpoena in his hand. The sheriff read the subpoena aloud in Gladstone's presence and handed it to his female companion along with the required witness fees. The sheriff then filed a return describing the manner of service. Gladstone failed to appear in court in response to the subpoena.

On the basis of these facts, the defendant requested that the trial court issue a capias in accordance with General Statutes § 52-143 (d). It denied the request, stating that it was without authority to issue a capias because the subpoena was not placed in Gladstone's hands and was, therefore, improperly served.[2]

Section 52-143 of the General Statutes provides for the service of a subpoena, and provides sanctions against a proposed witness for failure to appear in court on the day and time designated in the subpoena. The trial court is empowered "on proof of the service of a subpoena and the tender of [witness] fees, [to] issue a capias directed to some proper officer to arrest the witness and bring him before the court to testify." General Statutes § 52-143 (d).

The issuance of a capias is not mandatory, and lies within the discretion of the trial court. *DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303 A.2d 709 (1972). If,

posed witness. It was not until argument on the defendant's motion for a new trial which was heard prior to sentencing that defense counsel was permitted to offer proof of Gladstone's expected testimony.

[2] Since the trial court ruled, in effect, that the service of the subpoena was defective for purposes of issuing a capias, the issue of whether the witness had a reasonable excuse for his failure to appear and testify was never reached. The facts as alleged in the return of service of the subpoena were accepted as true by the trial court for purposes of its ruling and the subpoena was marked for identification.

however, a witness is not warranted in refusing to honor a subpoena and his absence will cause a miscarriage of justice, the court should issue a capias. Id. In the present case, the court never exercised any discretion because it believed its authority to do so was lacking. It is clear that the court had the power, if the witness had actually been served and refused to appear, to issue a capias. See *State* v. *Frye*, 182 Conn. 476, 483, 438 A.2d 735 (1980).

It is the state's argument that General Statutes § 52-143 (d) requires in-hand service because of the statutory words "upon whom a subpoena is served."[3] The statute does not use the words "personal service," or the words "in-hand service." Acceptance of the state's insistence upon such a strict reading of the quoted words would render it virtually impossible to effect service upon a witness who is determined to be recalcitrant or determined to insulate himself from a court appearance. Service of a subpoena "upon" a person does not require physical acceptance of it, if the person is given notice of it and its contents. See 97 C.J.S., Witnesses § 23.

This interpretation of the quoted words comports with the service of civil process, which may be by either abode or manual service. See General Statutes § 52-54; *Weil* v. *Miller*, 185 Conn. 495, 441 A.2d 142 (1981); *Gluck* v. *Gluck*, 181 Conn. 225, 435 A.2d 35 (1980).

Further, the defendant, in seeking the capias, was, in effect, raising a constitutional right, the right to compulsory process. See U.S. Const., amend VI; Conn. Const., art. I § 8. The word "upon" as used in General

---

[3] General Statutes § 52-143 (d) provides in pertinent part: "[I]f any . . . person upon whom a subpoena is served to appear and testify in a cause pending before any court . . . fails to appear and testify, without reasonable excuse, he shall be fined . . . and the court . . . on proof of the service of a subpoena . . . may issue a capias . . . ."

Statutes § 52-143 (d) should not be read literally when to do so would diminish or contravene a constitutional right.

The trial court erred when it ruled it had no power to issue a capias because of the admitted lack of in-hand service of the intended witness. In view of the defendant's alibi defense, and the circumstances surrounding the pretrial identification of the defendant by the victim, the expected testimony of the witness that Mr. Booth's voice was that of a regular customer of the massage service rather than that of the defendant, looms as a large exculpatory element in the trial of the defendant. The error has not been shown by the state to be harmless beyond a reasonable doubt. *State* v. *Cohane,* 193 Conn. 474, 484–85, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984).

The resolution of this issue disposes of the defendant's appeal, making it unnecessary to consider the defendant's second claim of error. The claim arose because of a tactical decision of the defendant's former trial counsel. The defendant was asked on direct examination whether he had ever been arrested for a crime in the nature of rape. The defendant replied that he had not. On cross-examination, the prosecutor asked the defendant about all of his arrests. The trial court overruled the defendant's objection to the question. The defendant's present counsel indicated at oral argument that he would not use the same tactic again. It is, therefore, unlikely that the claim will recur.[4]

There is error, the judgment of conviction is set aside and a new trial is ordered.

In this opinion the other judges concurred.

---

[4] Evidence of an arrest without a conviction is inadmissible to impeach a witness' credibility, absent its being within the scope of direct examination. *Penfield* v. *Venuti,* 589 F. Sup. 250, 253 n.1 (D. Conn. 1984); see *State* v. *Anonymous,* 34 Conn. Sup. 656, 658–59, 384 A.2d 386 (1978).